## ELI A. YOUNG

### v.

## JOHN COLLIER and others.

Defendants in possession of the premises in their answer to a bill for specific performance of a contract to sell an undivided interest in lands, together with an assignment of complainant's interest in an ice crop on the premises, objected to carrying out their agreement (although their objections were not set out specifically) on the ground of defects in the title to the lands, and also because an assignment of the interest in the ice crop had not been tendered with the deed. At the hearing it appeared that the only defect in the title at the time of the tender was a lien for unpaid taxes for two years, which were subsequently paid; that no objection was then made because no assignment of the ice crop was tendered, and that the real ground of defendants' refusal to comply with the contract was an apprehension that they would not be able to carry on business on the premises amicably with one of their tenants in common.—*Held*, that the objections constituted no bar to specific performance.

Bill for specific performance. On final hearing on pleadings and proofs.

*Mr. P. H. Gilhooly*, for complainants.

*Mr. C. T. Cowenhoven*, for defendants.

THE CHANCELLOR.

By an agreement in writing made by and between the parties to this suit, dated February 19th, 1878, and signed by them, the defendants purchased from the complainant, and he agreed to convey to them accordingly, the interest (three-eighths) which he owned in certain land in Middlesex county (used for flooding to make ice for sale, and for storing ice in the building thereon), known as the Kennebec Ice Company's property, and owned in undivided shares by the persons composing the firm of ice dealers known as The Kennebec Ice Company, and containing twenty-three acres, or thereabouts, for which they were to pay him $3,000, as follows : $200 at the signing of the agreement, $800 when a satisfactory title should be made to them for the property, $500 in their note, payable July 1st, 1878, and $1,500 by their bond, to be secured by a mortgage of the premises, of even date with the deed, and to be payable in two equal installments, in three and four years, with lawful interest payable semi-annually. It was also thereby stated that the complainant held the control of an eighth of the ice to be produced on the pond for the year ending December 1st, 1878, although the title to it was held by F. A. Ayer, and it was thereby agreed that the complainant would cause that interest to be assigned to the defendants for their sole use and benefit on the payment by them to him of the sum of $62.50.

The bill is filed by the seller to compel specific performance of the agreement. The defendants paid to the complainant, on signing the agreement, the $200 which they stipulated to pay at that time. About the 23d of February, a few days after the making of the agreement, the complainant tendered to one of the defendants, Green, a deed for the three-eighths and a bond and mortgage to be executed by the defendants according to the agreement. Green took the deed but did not read it. Both Green and Collier, on the same day and very soon after the tender, refused to carry out the agreement, and asked the complainant to mention

the terms on which he would absolve them from liability under it. He refused to do so and declared that he would take legal proceedings to enforce performance on their part.

The answer substantially admits the tender. It alleges that the title was imperfect when the deed was tendered, but it does not specify in what respect. On the hearing it was insisted that it was imperfect because of the existence of a mortgage of $216.94 upon the whole property, which was uncancelled of record, and because the taxes on the property for two years were unpaid, and because a claim of lien for $20 was made by the person in whose hands certain ice-tools. were, the complainant's interest wherein was sold with his interest in the land, although the agreement is silent on that subject; and further, because the property was subject to liabilities for improvements (buildings) which had been put on the property by the firm, and to unpaid liabilities of the firm to workmen; and because the complainant did not tender with the deed an assignment of the interest in the ice crop for the year ending December 1st, 1878, mentioned in the agreement. In the first place it appears that the defendants did not refuse to perform the agreement because of those objections or any of them, but, when the deed was tendered, refused on other grounds to carry out the agreement, and sought to get rid of the obligation of the contract. They entered into possession of the property immediately after the agreement was made, and took into their possession the tools before mentioned, or some of them. The reason they gave the complainant for not carrying out the agreement was, that "things were not in the right shape," and this expression appears to have had reference to matters not connected with the title to the property.

According to the testimony of the defendants themselves, none of the objections now made to the title were made at the time of the tender of the deed. Nor was any mention made of any of them except the claim made upon the tools by the person who had them in his keeping. As to that claim, it appears that it constituted no lien whatever upon,

Young *v.* Collier.

the tools, and the person who made it testifies that he would have delivered them up without payment of it, to the complainant, on request.

The complainant swears that while mention was made of the claim, no objection to performing the contract was made on that account. The fact that the mortgage of $216.94 stood uncancelled on the record, constituted no reasonable objection to the title. The mortgage was made in the year 1813. It was given to secure the payment in one year from its date of the amount of a bond, with interest. The bond was, at the time of the tender, in the possession of Wesley Benner, who was the owner of an undivided interest (one-fourth) in the property, and it was cancelled. It appears not only by the receipts endorsed thereon, but by the accounts of the administrators of the mortgagor, to have been paid in full in 1817, over sixty years ago. Nor was there any ground of objection from apprehension of claims of mechanics liens 'n respect to the buildings on the property. There were no such claims on file, and of the buildings that which was first built was built in 1873 and 1874, and the last one in 1875. It is unnecessary to speak of the debts of the firm, though it may be stated that it appears that there are none unpaid in fact.

The defendants urge that the complainant did not tender to them with the deed the assignment of the interest of Ayer in the ice crop. But they did not demand it, nor did they object to receiving the deed because the assignment was not delivered with it. If they had done so the complainant swears he would have obtained it for them. So, too, in regard to the taxes; he would have paid them if the defendants had objected to the title because they were not paid. They were paid in March, 1878.

It is clear, from the testimony, that the defendants refused to accept the deed, not because of defects in the title, but because they were apprehensive that they would not be able to carry on the business or use the property harmoniously with Benner. Before the complainant tendered the deed,

they went to the gentleman who had drawn the agreement for them, and inquired of him what would be the consequence of their refusal to carry it out. He answered that he was unable to say, but presumed that they would be compelled at least to forfeit the $200 which they had paid at the signing of the agreement. The complainant testifies that they told him, on the day when the tender was made, that they would forfeit the $200 and would throw the whole thing up and would have nothing more to do with the matter. He says he remonstrated with them and expressed his surprise, saying that he supposed he was dealing with honorable men, and he says the reason they gave for throwing up the bargain was that they had seen Benner, who owned one-fourth of the property, and they were satisfied that they could not get along with him without trouble.

There should be a decree of specific performance, and the defendants should pay costs.